IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| STEVEN JAMES ELSIK, § | | |
| TDCJ-CID # 1099296, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. V-02-103 |
| § | | |
| MIKE RATCLIFF, et al., § | | |
| § | | |
| Defendants. § | | |

**MEMORANDUM OPINION AND ORDER**

Steven James Elsik, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed a civil rights complaint under 42 U.S.C. § 1983 against officials of the Victoria County Jail (VCJ) claiming that his constitutional rights were violated when he unknowingly ingested part of a razorblade which had been allegedly planted in his food.  After dismissing three of the defendants, the court ordered the remaining defendants, Lieutenant Michael Andes and Food Services Supervisor Jay Truehart, to answer the allegations and file a dispositive motion.  Andes and Truehart have filed a Motion for Summary Judgment (Docket Entry No. 21) supported by certified copies of VCJ records, affidavits, and VCJ regulations.  After reviewing the Motion for Summary Judgment, Elsik's response, and the supporting evidence, this court has determined that the Motion (Docket Entry No. 21) should be **GRANTED** and that this action should be **DISMISSED**.

## I. Allegations and Claims

Elsik states that he was incarcerated in VCJ for approximately eight months from October 2001 until May 28, 2002, pursuant to charges for offenses involving sexual assault, forgery, and theft by check. Elsik was overweight and malnourished due to an excessive use of drugs before he was arrested. More Definite Statement, Docket Entry No. 12, at 5. He also claims to be a vegetarian. *Id.* Consequently, he was placed on a diet and given special trays because of his poor health. Although he was provided with prescribed bland low-cholesterol meals, Elsik filed numerous grievances complaining about the quality of the food being served to him. *See* Attachments to Complaint. Truehart responded to the majority of the complaints indicating that the problems would be addressed. *Id.* Elsik asserts that Andes also answered several of his complaints.

Elsik alleges that he received anonymous, threatening notes which were written on his Styrofoam trays between April 12, 13, and 14, 2002. He claims that the trays were confiscated by Corporal Kelly Alexander and an officer named Helmer. Docket Entry No. 12, at 1. Elsik claims that Andes and Truehart were aware of the threats due to their previous handling of his grievances and their assurances that his meals would be properly prepared. *Id*. at 1-2. However, he does not present copies of any grievance alluding to the threatening notes nor does he state that such a grievance was filed.

Elsik alleges that on May 25, 2002, he was served a meal which was embedded with razor pieces. He further claims that he began experiencing discomfort and rectal bleeding after he ate the tampered meal. *Id.* at 4. Elsik was taken to hospital and x-rayed; however, nothing was found. He was then returned to VCJ and sent to the infirmary for observation. *Id.* at 5. Andes ordered that Elsik be placed on suicide watch and Elsik remained at that status until he was transferred to the TDCJ-CID. *Id.* at 5-6.

Elsik believes that a kitchen trustee named 'Horse' may have tampered with his food because he had worked there before being convicted and sentenced to fifteen years for sexual assault. *Id*. at 4. Elsik also suspects that he had enemies who were known to Andes. *Id*. He further speculates that his numerous grievances may have resulted in reprimands for trustees under Andes's and Truehart's supervision. *Id*. at 4-5.

Elsik admits that he was diagnosed as stable in June of 2002, and apparently suffered no lasting physical ailments from the episode. *Id*. at 6. However, he complains that he was bleeding at the time of the incident and that he has suffered mental anguish as a result of the defendants' failure to protect him. *Id*. at 4. He specifically argues that Truehart and Andes were responsible for safe handling of the food by the trustees and needed to account for razors which were used by the trustees. *Id*. at 3. Elsik states that both officials were aware that the meals were served on trays which clearly identified the inmates for which they were intended. *Id*. at 4. Despite their knowledge, and Elsik's numerous grievances, the defendants failed to properly supervise the meal preparation which allowed the assault to occur. *Id.*

## II. Summary Judgment Standards

In deciding a motion for summary judgment, the Court must determine whether the pleadings and records indicate if there is a genuine issue regarding any material fact and whether the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue. *Rushing v. Kansas City Southern Ry. Co.*, 185 F.3d 496, 504 (5th Cir. 1999). To meet this burden, the movant must present evidence that shows that the nonmovant cannot carry

its burden of proof at trial. *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). Once the movant has met this burden, the non-movant must present specific facts showing that there is a genuine issue for trial. *Id.*

The court construes the evidence such that the nonmoving party is favored and does not weigh the evidence, assess its probative value, or resolve any factual disputes. *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996). However, the nonmovant cannot rely on "conclusory allegations" or "unsubstantiated assertions" to establish that there is a triable issue. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1047 (5th Cir. 1996). Nor is the nonmovant's burden satisfied by casting "some metaphysical doubt as to material facts" or where "only a scintilla of evidence" has been brought forth. *Fiesel v. Cherry*, 294 F.3d 664, 667 (5th Cir. 2002); *Spectators' Communication Network Inc. v. Colonial Country Club*, 253 F.3d 215, 219 (5th Cir. 2001). Factual controversies will be decided in the nonmovant's favor only when both sides have presented evidence showing that there is an actual controversy. *Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 518 (5th Cir. 1998), *citing Little*, 37 F.3d. at 1075. In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. Id.

### III. The Defendants' Evidence and Arguments

The defendants contend that Elsik has failed to demonstrate deliberate indifference because there is no evidence that he was given any food that had been embedded with razor blades or razor blade pieces. They further contend that even if Elsik had swallowed a portion of a razor blade, there is no evidence that they were involved with the alleged food tampering or that they were aware that Elsik was at risk of being injured. They specifically assert that there are no allegations or evidence which indicate that: 1) the defendants planted a razor blade or razor part in Elsik's food; 2) the

4

defendants had any knowledge that a razor blade or razor part had been placed in Elsik's food; or 3) the defendants were aware that anyone intended to harm Elsik. The defendants also contend that they are entitled to qualified immunity because they are government officials and that there is no evidence of any constitutional violations and no evidence that their actions were objectively unreasonable.

The defendants also assert that Elsik's complaint should be dismissed because he failed to exhaust available administrative remedies before filing his complaint. *See* 42 U.S.C. § 1997e; *Porter v. Nussle*, 122 S.Ct. 983, 988 (2002); *Harris v. Hegmann*, 198 F.3d 153, 157 (5th Cir. 1999). The defendants state that VCJ had an established grievance procedure and that there is no evidence that Elsik had prepared any written grievances pertaining to the causes of action in this lawsuit.

In support of their arguments, the defendants present the following summary judgment evidence attached to the motion (Docket Entry No. 21):

| | |
|---|---|
| Affidavit of Records Custodian Adam Reynolds and Elsik's VCJ File | Exhibit A |
| Affidavit of Jay Truehart | Exhibit B |
| Affidavit of Mike Andes | Exhibit C |
| Inmate Handbook | Exhibit D |

The records show that Elsik was brought into VCJ on October 17, 2001, after having been arrested for theft, theft by check, and sexual assault of a child. Exhibit A, Bates Stamp 1. He pled guilty to and was convicted of the theft charges on October 24, 2001. *Id*. at 4-6. He was later convicted of aggravated sexual assault. *Id.* at 62. On October 25, 2001, Elsik was classified as a maximum risk inmate and was placed in protective custody before the alleged food tampering incident. *Id*. at 7-9, 13.

Inconsistent with Elsik's statements that the incident occurred on May 25, 2002, the records show that Elsik reported that he swallowed a piece of razor blade concealed in his meal on May 24, 2002.  *Id*. at 10, 11, 75, 76.  Although Elsik stated that he was experiencing "heartburn," there were no visible signs of injury to his mouth or throat and he did not appear to be in any physical distress. *Id.* at 75.  Despite the apparent lack of injury, Elsik was taken to the emergency room at Citizen's Medical Center for medical attention.  *Id*. at 10, 11.  While there, Elsik's neck, chest, stomach, and abdomen were x-rayed.  *Id.*  The examining physician, Dr. Vaughn, reported to Elsik that the x-rays did not detect the presence of any razor blades or parts of razor blades in his body.  *Id*. at 11.  When Elsik insisted that he had indeed swallowed a piece of a razor blade, Dr. Vaughn assured him that the x-rays would have detected it.  *Id*.  Elsik was then sent back to jail.

When Elsik was returned to VCJ from the hospital, he met with Officer Kellye Stillwell, who was accompanied by Deputy Malina, Deputy Gundelach, and Nurse Ellis who served as witnesses. *Id.* at 10.  Apparently unable to accept the fact that he had not swallowed anything harmful, Elsik stated that he would be calling the control room at some later time because he was sure that he would be suffering with stomach difficulties.  *Id.*  Elsik expressed his belief that the doctor was wrong with his assessment and that the razor must have been hidden from view on the x-ray.  *Id*. Nurse Ellis contacted the Jail's contract physician, Dr. Smith, for advice on how to handle the situation.  *Id*.  Upon Dr. Smith's advice, Elsik was placed in the VCJ infirmary to remain under observation.  *Id*.  Elsik remained there for the weekend without incident and no razor blades or razor fragments were ever found.  *Id*.  at 77.

6

## IV. Analysis

A. Grievances

Elsik was required to exhaust available grievance procedures before he could file a prisoner civil rights suit. 42 U.S.C. § 1997e(a). Elsik's jail custodians were entitled to a fair notice of the alleged food tampering before he filed his suit in federal court. *Porter v. Nussle*, 122 S.Ct. 983, 988 (2002) (purpose of § 1997e(a) is to filter out baseless claims and to allow custodial officials to respond to legitimate complaints without burdening the courts). The defendants have submitted a copy of the VCJ Inmate Handbook which explains the procedures for filing a grievance. Docket Entry No. 21, Exhibit D, at 11. Under the procedures, Elsik was required to submit a written statement to the "Detention Division Grievance Officer (designated by the Sheriff as the Sergeant of Inmate Services Unit) stating the time, name(s) of staff members involved in the event, and all pertinent details of the incident(s) including names of witnesses . . . within sixty (60) days of the incident." *Id*. at 11-12. The Texas Commission on Jail Standards has held that the VCJ grievance procedure complies with the Texas Administrative Code. *See* http://www.tcjs.state.tx.us. Regardless of the procedures' validity, Elsik was obligated to use whatever administrative remedies were available. *See Ferrington v. La. Dep't of Corrs*., 315 F.3d 529, 531-32 (5th Cir. 2002) (Louisiana inmate was required to exhaust state prison administrative remedies despite prior finding by Louisiana Supreme Court that the statutory state grievance system was unconstitutional).

Elsik's VCJ records (Docket Entry No. 21, Exhibit A) are replete with grievances concerning the quality of the food he has been served. He complained that the food was unsanitary. *Id*. at 39. He complained that there were coffee grinds and hair on it. *Id*. at 40. He complained that he was given "cheese bread cold 3 meals in a row . . ." *Id*. at 40. He even complained that there were no

7

fish or poultry dishes served on his "vegetarian" trays. *Id.* at 69.[1] However, there are no grievances addressing the food tampering incident. Although there are several records of Elsik's requests for medical assistance which relate to the incident (*Id.* at 75-77), they do not mention Andes or Truehart nor is there any allegation that Elsik was injured as a result of deliberate indifference on the part of any VCJ official. Therefore, under 42 U.S.C. § 1997e, Elsik's claims are barred from consideration by the federal courts, and this prisoner lawsuit is subject to dismissal. *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998).

     B. Deliberate Indifference

Apart from Elsik's failure to exhaust available remedies, the record in this case demonstrates that he is not entitled to relief under 42 U.S.C. § 1983. A prisoner's failure to protect claim is based on the Eighth Amendment's prohibition against cruel and unusual punishment. *Horton v. Cockrell*, 70 F.3d 397, 400-01 (5th Cir. 1995), *citing Farmer v. Brennan*, 114 S.Ct. 1970, 1977 (1994). A prisoner asserting such a claim must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999). An official acts with deliberate indifference only if he is aware of facts from which the inference could be drawn that there exists a substantial risk of serious harm to an inmate, and the official actually draws that inference. *Neals v. Norwood*, 59 F.2d 530, 533 (5th Cir. 1995), *citing Farmer*, 114 S.Ct. at 1979. Mere negligence does not constitute deliberate indifference. *See McClendon v. City of Columbia,* 305 F.3d 314 325-26 (5th Cir. 2002). A prisoner must show that the defendant officials displayed a reckless disregard for his safety. *Farmer*, at 1980.

---

[1] Truehart responded by reminding Elsik that he was on a "no meat" diet which precluded serving fish or chicken. Truehart further stated that he would investigate why the kitchen was not sending him peanut butter and grilled cheese as a protein substitute.

Elsik has failed to show that there was any evidence of food tampering because there is no record that there was an actual razor blade or a portion of a razor blade in his food. Elsik merely relies on his own statements that he found a razor blade portion in his food and that he may have swallowed a razor blade portion. When he reported to the VCJ staff that he swallowed a portion of a blade, he did not present any razors or pieces which had not been swallowed; nor did he present any other evidence that a blade had been swallowed. As a precautionary measure, the VCJ officials sent Elsik to the Emergency Room for x-rays and examination where the doctors were unable to find any evidence that Elsik had swallowed a portion of a razor blade. Despite the negative findings, Elsik was placed under observation for several days.

In his response to the defendant's motion (Docket Entry No. 23), Elsik asserts that there is evidence in the record which shows that a nurse did find 1/4 of a razor blade in a bell pepper. *See* Docket Entry No. 21, Exhibit A, Bates Stamp 75. Elsik misconstrues the record entry which is a VCJ "Medical Assistance Request" consisting of a shorthand note describing Elsik's complaint about the alleged tampering and a subsequent examination of Elsik. The initial note in regard to the complaint was made by Nurse Ellis as follows:

> "States thinks swallowed Razor Blade [sic]
> 1/4 Razor [sic] blade found in Bell [sic] pepper States while chewing
> it felt something hard spit it out
> but thinks he could have swallowed another piece
> when first started eating salad - felt it on back of throat
> States has been having trouble [with]
> trays & have been complaining -
> today had written on tray
> Lid Gets Diet tray [with] Styrofoam
> 'Quit complaining' & also had 'Horse'
> written on it    Say M. [unintelligible] / Lt. Andes
> aware of this  Also other things have been written on tray lids by Kitchen Trustees"

Exhibit A, at 75. (Emphasis added)

Nurse Ellis's recorded observations are as follows:

"Ø noted trauma to mouth area or
back of throat.
Inmate appears in Ø distress / states feels cramping points to [left] upper gastric region states feels like he has heartburn
Sent to ER per [unintelligible] by Erval by M.D. "

*Id.*

Although cryptic, the first part of Nurse Ellis's notes are clearly records of Elsik's verbal complaints in which he expresses his belief that he found a portion of a razor and swallowed another portion. The second part of Nurse Ellis's notes are her visual observations in which she indicates that there are no visible injuries and that Elsik does not seem to be in any distress although he reports some discomfort. There is no entry indicating that Nurse Ellis actually saw a part of razor blade. Elsik's unsubstantiated assertions are inadequate to defeat the evidence the defendants have presented in support of their argument that there was no razor and that Elsik was not injured. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996).

Elsik also contends that the fact that he was immediately taken to a hospital for examination and observation is significant evidence that he actually did swallow a razor blade. The court is not persuaded by such reasoning. Instead, the fact that VCJ took the precaution of hospitalizing an inmate with no outward signs of trauma indicates that the officials were exercising great care in avoiding any possibility of physical harm to one of the jail inmates. The records of such action indicate that Elsik's safety needs were considered while he was in the VCJ. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995), *citing Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir.1993).

The lack of evidence of any injury weighs also against Elsik's bid for relief. Elsik has admitted that an examination conducted about one month after the alleged food tampering incident

10

revealed no lasting serious injury.  The nurses's notes indicate that no trauma was observed when Elsik first thought he swallowed a razor portion, and that the x-rays failed to reveal the presence of any dangerous object in his body.  Although Elsik insists that there is evidence, he identifies no record in support of this argument.  In an attempt to buttress his case, he points to a record (Docket Entry No. 21, Exhibit A, at 77) which indicates that he refused to eat after the incident.  This record merely demonstrates his unsubstantiated fear of being attacked.  Such fears do not entitle Elsik to any recovery.  *Babcock v. White*, 102 F.3d 267, 271-72 (7th Cir. 1996).  At the most, Elsik has only demonstrated that he has suffered mental or emotional injury as a result of the ordeal.  Such a showing does not entitle him to relief and this action is subject to dismissal.  *Jones*, 188 F.3d at 326, *citing* 42 U.S.C. § 1997e(e).

In addition to the absence of any physical injury, the record is also bereft of any evidence that the defendants could have been aware that Elsik was in any danger of being assaulted or harmed.  As noted above, Elsik filed numerous complaints; however, they primarily concern the quality of the food being served to him and are devoid of any reports of threats of physical attack. *See* Docket Entry No. 21, Exhibit A.  Both defendants have submitted affidavits in which they acknowledge that they were involved with supervising the preparation of Elsik's meals.  Docket Entry No. 21, Exhibits B and C.  They also acknowledge that Elsik had been complaining about the food.  *Id*.  However, they both deny any knowledge of any inmate making a threat against Elsik or that Elsik was otherwise in danger of sustaining serious bodily harm.  *Id.*  Moreover, both defendants deny being aware of any inmate being injured by a foreign object in their food at the VCJ.  *Id*.  Elsik asserts in response that he received a threatening note signed by "Horse" on May 23, 2002. (Docket Entry No. 23, page 4).  However, the note merely told him to stop complaining.  *Id*.  The Eighth Amendment mandates "reasonable" safety,  not "absolute" safety.  *See Newton v. Black*, 133 F.3d

11

301, 307 (5th Cir. 1998). There is no evidence that either defendant had any information which they could reasonably use to determine that Elsik was in any danger. In light of the evidence, neither defendant can be held to be liable, and Elsik's complaint is subject to dismissal. *Downey v. Denton County*, 119 F.3d 381, 386 (5th Cir. 1997).

The defendants have demonstrated that there are no genuine issues of material fact regarding the claims and they are entitled to summary judgment as a matter of law under FED. R. CIV. P. 56.

### V. Conclusion and Order

The court **ORDERS** the following:

1. The defendants' Motion for Summary Judgment (Docket Entry No. 21) is **GRANTED**.

2. This action is **DISMISSED** with prejudice. FED. R. CIV. P. 56(c).

**SIGNED** on this 6th day of March, 2006.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE